## POWELL v. WRAGG & STEWART.

1. The possession of personal property, obtained by a fraudulent contract, with one indebted at the time, will not ripen into a title by force of the statute of limitations, against the creditors of the vendor.

Writ of Error to the Circuit Court of Tallapoosa. Before the Hon. S. Chapman.

TRIAL of the right of property. The defendants in error levied an execution on slaves, as the property of David Powell, which were claimed by the plaintiff in error, and bond given to try the right. In the progress of the trial, a bill of exceptions was taken to the ruling of the presiding judge, which presents the following facts: The plaintiff in execution read to the jury, the execution levied on the slaves, against David Powell, issued from the circuit court of Macon county. The judgment on which it was issued, was rendered in Macon circuit court in April, 1839, on which execution had issued to Macon county, and was returned no property. The sheriff was examined by the plaintiffs, who testified that he levied on the slaves at the house where the defendant in execution and his family resided. It was proved that David Powell was the father of the claimant, and that the slaves

21

have been in Tallapoosa county since May, 1839; that David Powell and his family have resided on a tract of land in Tallapoosa since 1839, except during the year 1841, during which year, the claimant acted as overseer for a gentleman in Macon county, but his family resided in Tallapoosa. The defendant in execution was shown to have been insolvent since 1839. The claimant is an unmarried man, and is about twenty-nine years old. It was shown that said David disclaimed being the owner of the land on which he and his family resided since 1839, and has admitted it to be the property of the claimant. It was shown that the slaves levied on, have lived at the same place where David Powell and his family resided, ever since the date of a bill of sale from David Powell to the claimant, which bears date in May, 1839, and was executed by the defendant in execution, David Powell, to the claimant his son, and conveys five negroes, mules, wagon, &c. and expresses to be in consideration of $3,100; but the claimant, ever since the date of the bill of sale, either by himself, or his overseer, who was his younger brother, has had the control of the slaves, and David Powell, the defendant in execution, has disclaimed all right to, or control over them. That during the years 1839 and 1840, the claimant himself had possession of the slaves, and made a crop with them, and since then, through his overseer, his younger brother, who has had control of said slaves, and who resides on the same place, and lives in the same house where David Powell and his family reside. That since 1840, his younger brother has been in the employment of claimant, at $150 per year, but as yet nothing has been paid to him; he is now twenty-seven years old. The claimant, since 1840, has followed the employment of an overseer, and since then has paid debts for his father, the defendant in execution, to the amount of ten or twelve hundred dollars. There was no evidence that the plaintiffs had notice of the sale, unless notice could be inferred from the fact, that nothing had been realized from the judgment on the control of the negroes by claimant as aforesaid. There was evidence tending to show, that the negroes were delivered to claimant, by the defendant in execution, at the date of the execution. On this evidence, the court charged the jury, that if

they believed the sale from David Powell to the claimant was fraudulent in its inception, that time would not purify it, and that the statute of limitations of six years would not defeat the plaintiff, notwithstanding that period had elapsed since the sale.

The counsel for the claimant requested the court to charge the jury, that if they believed that the plaintiffs in execution had notice of the sale, that then the statute of limitations of six years would defeat them, if more than six years had elapsed before the levy of the execution; which charge the court refused; and the charge given, and the refusal to charge, are assigned for error.

RICE, for the plaintiff in error, made the following points:

1. The common saying, that the statute of limitations is not a bar, where there is a fraud or a trust, is a mistake. All actions within the statute, are barred by it, both at law and and in equity. Smith v. Bishop, 14 Verm. Rep. 110; Hamilton v. Sheppard, Adm'r, 3 Murphy's Rep. 115; 17 Wend. 202; 20 Johns. Rep. 33; 5 Wend. 30; 3 Littell, 183; and many other authorities. A claim to personal estate, is barred at law, no matter how imposing it may be. Johnson v. Johnson, 5 Ala. 90; 1 Ala. 653.

2. Even in those States, where no chancery jurisdiction exists, separate from a court of law, an action founded on a fraud, or a deceit, is barred by the statute. 9 Picker. 240; 3 Greenl. 405. And it is immaterial, whether the claimant's deed, or purchase, is fraudulent or not; the statute commenced running from the time the right to levy on the slaves existed. 4 Adolph. & Ellis, 519; 3 Iredell, 481.

3. A conveyance originally fraudulent, may become valid by matter *ex post facto*. 2 Ala. 181; 5 Id. 324; 3 Metc. 332; 12 Mass. 140.

4. Possession of slaves in this State, under a claim of title, not only bars an action for their recovery, but vests the absolute title to them in the possessor. 2 Ala. 555; 1 Cowper, 218; 1 Ala. 650.

HOPKINS and JONES, contra.

1. There is no question but the sale was fraudulent; and

the possession of such a fraudulent vendee, is not an adverse possession against the vendor. Roberts Fraud. Conv. 595-6; 10 Johns. 232-3; Ballentine on Lim. 374.

2. A sale made with a fraudulent intent is incapable of confirmation. 4 S. & R. 483; Rob. Fraud. Conv. 494-5.

3. The procedure, called a trial of the right of property, is not barred by any statute. It is a remedy given to the claimant to protect his property from sale.

DARGAN, J.—On a trial of the right of property levied on, and claimed by a stranger to the execution, the only issue is, whether the property is subject to the execution; hence the statute of limitations can never be invoked on such a trial, unless for the purpose of showing an indefeasible right in the claimant to the property; or by the plaintiff in execution, to show that the title of the claimant is divested, and vested in the defendant in execution, by the uninterrupted possession of the chattel, adversely to the title of the claimant, for a period of time that will, by statute, give title.

The statute of limitations, when applied to real estate, or to personal property, operates not only by way of barring the remedy for the recovery thereof, but acts directly on the title, and vests in the possessor, when his possession has been adverse, and uninterrupted, for the space of time required by the statute, an indefeasible title. See 2 Ala. R. 561; Shelby v. Gay, 11 Wheat. 361; Brent v. Chapman, 5 Cranch, 358. Hence it would follow, that if the title of the claimant depended on his possession, and this had been adverse to the title of the defendant in execution, and this possession had continued for a time sufficient to bar the defendant of all remedy for the recovery of the slaves, before any *lien* was created on them, the title of the claimant would be absolute, and indefeasible to the slaves. The defendant, by virtue of his title, could not recover them, or divest the title of the claimant; nor could a creditor of his, or any one else that claimed by, or through, or in consequence of the title of the defendant in execution. But this is not the character of the claimant's title; he claims the slaves by virtue of a fraudulent bill of sale, executed by the defendant in execution, in fraud

of the rights of the plaintiffs, as creditors. This title is void as to the creditors, and the claimant seeing this, he now attempts to set up title by the statute of limitations; for it is very certain that time will not purify the fraud in the original purchase; but he says, although my purchase was fraudulent and void, I have a good title by the statute of limitations, as against the defendant in execution, and therefore a good title as against you. It therefore becomes necessary to examine into the character of his possession. The slaves have remained on the plantation where the defendant in execution and his family have resided, from the time of the pretended purchase until now. A younger son living with the family, and in the same house, has had control of them; as yet he has never received a dollar from his brother for his services. The claimant does not show that he has received the proceeds of the labor of the slaves, or that their labor, or their product on the farm, does not go to the support of the family of the defendant in execution; or that the slaves do not serve the defendant in execution since the sale as they did before the sale. Leave then the bill of sale out of view, and look to the title of the claimant, as founded on his possession, for a time sufficient to bar the right of the defendant in execution, and we see the slaves yet with the defendant in execution; in fact, at the house he and his family live at. How is his family supported? Who receives the profits of the labor of the slaves? The claimant does not inform us, and therefore it is but reasonable to presume, that the slaves yet serve the defendant and his family.

Such a possession cannot be the foundation of a title by the statute of limitations; therefore there is no error in the charge given, or in refusing to give the charge requested. The judgment of the circuit court is consequently affirmed.

COLLIER, C. J.—The second section of the statute of frauds enacts, that every gift, grant, or conveyance of lands, tenements, hereditaments, goods or chattels, &c., by writing or otherwise, had, or made, and contrived of malice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, shall be,

from henceforth deemed and taken only as against the person or persons, his, her, or their heirs, successors, executors, administrators or assigns, and every of them, whose debts, suits, demands, &c., by such guileful and covinous devices and practices as is aforesaid, shall, or might be in any wise disturbed, hindered, delayed or defrauded, to be clearly and utterly void; any pretence, color, feigned consideration, expressing of use, or any other matter, or thing, to the contrary notwithstanding. Clay's Dig. 254, § 2. This enactment explicitly declares, that every "gift, grant, or conveyance" made with the intent to delay or defraud the creditors of the grantor, shall be utterly void; and this whether the transaction be written or merely oral. Here is language too plain to be misapprehended. If then, the gift or grant is wholly inoperative, a consequent possession can derive no aid from it. Such possession must be referred to the authority under which it originated, and if this be a nullity, the possession will have no foundation upon which it can rest; and no matter how long continued, cannot change the character of the donor's or grantor's possession, or prejudice the creditors' rights. So far as it concerns the creditor, the debtor may still be considered as continuing in the possession, and the voluntary or fraudulent grantee cannot call to his aid the statute of limitations, so as to give himself a title in despite of the express provisions of the statute. In this view, it is immaterial whether the defendant in execution, or claimant, was in possession of the property in question, from the time of the transfer, as the plaintiff, by the claimant's possession for more than six years previous to the levy, cannot be defeated. I am therefore for affirming the judgment of the circuit court.

CHILTON, J., not sitting.