## FLAKE & FREEMAN *vs.* DAY & CO.

1. The affidavit of the defendant's indebtedness and non-residence, required for the issue of an attachment under the act of February 5, 1846, may be made by an agent or attorney.
2. The act of February 5, 1846, is remedial, and should receive a liberal construction; its object was, to enable the complainant, without first reducing his demand to judgment, to reach by attachment in chancery whatever might be attached at law, and also money and effects of his debtor in the hands of third persons not liable to seizure from their nature.
3. When the debtor's property is purchased by a third person, at a price less than its real value, with intent " to hinder, delay and defraud" creditors, and is afterwards resold by him, the creditor may attach the money in his hands, the proceeds of the resale, by bill in chancery under the act of 1846.
4. When the bill alleges that the property thus fraudulently sold was the partnership property of the firm who were complainant's debtors, while the answers aver, and the proof shows, that it was the individual property of one partner, complainant is not entitled to a decree.

ERROR to the Chancery Court of Barbour.
Heard before the Hon. J. W. LESESNE.

Jeremiah Day & Co., of Florida, filed their bill against Wm. Flake and Wm. Freeman, in which they set forth, that they are the creditors of James M. Webb & Co. copartners, and recovered a judgment against them in Georgia, in January, 1847, for $888, besides interest and costs, which remains unpaid; that sometime in the year 1846 the defendants purchased of said Webb & Co. their entire stock of goods then on hand in Barbour county, together with all their notes and accounts, for which they gave their note for $1000; that said defendants effected said purchase by representing to Jas. M. Webb, who managed the business in Alabama, that the creditors of Webb & Co. had issued attachments against the firm

in Georgia, and were about to do so against the concern in Barbour, and thereby exciting alarm in the mind of James M. Webb, who was, as they allege, a weak-minded man, easily imposed upon; that by this means they effected the purchase of the entire stock of goods, and of the notes and accounts, for a sum greatly below their value; that the Webbs soon afterwards discovered that the representations of defendants were false, and made offers to rescind the sale. This the defendants refused to do, but agreed to give back the notes and accounts to the Webbs, and one hundred dollars, if the Webbs would give up their note for $1000, and allow them to retain all the goods and one account on a particular individual for about $60.

The bill charges, that the goods so obtained were worth about $2000; that Webb & Co. were insolvent at the time, and so known to be by defendants, and that the sale and purchase was made with intent "to hinder, delay and defraud" the creditors of Webb & Co.

The bill further avers, that the defendants, James M. and John N. Webb, are non-residents, and prays publication as to them, and for process of attachment and garnishment agreeably to the act of February 5, 1846, and for general relief.

The affidavit made when the bill was filed, of the amount due to complainants, and that Webb & Co., their debtors, were non-residents, is not made by one of the complainants to the bill, but by their solicitor and agent.

The Webbs answered, not denying the bill in any material part, but rather affirming its most material allegations.

Flake and Freeman file a joint answer, in which they admit the purchase of the goods, notes and accounts of James M. Webb, but allege, that they were the goods, notes and acounts of J. M. Webb individually, and not of any partnership. They give what they say is a true history of the transaction, in which they say in substance, that they bought the goods, &c., of James M. Webb, at his own instance; that he professed to desire to raise money to pay off his creditors, and that they had no intention to hinder or delay creditors, or to aid him in so doing; that the stock of goods was old and unsaleable, and the notes and accounts mostly small and difficult to collect;

and that when they gave their note for $1000 for the whole, they considered that, under the circumstances, they were paying a fair equivalent. They deny making any false representations to induce Webb to sell; that the transaction on their part was fair and *bona fide*, and was so on the part of Webb, as far as they knew; that about two weeks after the purchase, James Webb proposed to them to re-purchase the notes and accounts, saying that he could use them to advantage in payment of his creditors; that after examining the books and accounts for some time, Webb agreed to take them and one hundred dollars in cash, and give up to defendants their note for $1000, defendants keeping the goods. These notes and accounts they say were worth not over $600.

The answer further alleges, that the goods they bought were sold soon after the purchase to one Hendrix, who carried them to Georgia; that they got for them from Hendrix his note for $600, and a negro man "run from Georgia, taken subject to the chances of his entire loss;" that the goods were seized in Georgia under executions against the Webbs, and that they were compelled to pay about four hundred dollars to relieve them from these Georgia levies to protect said Hendrix; that they then took the unsold goods back from Hendrix, and gave his note a credit for $500, they retaining the slave; that they then brought this remnant of goods back to Eufaula, Alabama, and sold them out for about $500.

They deny, that any account for $60 was retained when the notes and accounts were re-sold to James M. Webb; deny that said Webb was of weak mind and easily imposed upon.

They demur to the equity of the bill.

At November term, 1850, a motion was made to dismiss the bill for want of equity, which was overruled. Afterwards, at the same term, the cause coming on to be heard on the bill, answers and proof, the Chancellor decreed:

1. That the purchase by Flake and Freeman was void for fraud, as against the creditors of Webb & Co.

2. That they were accountable to the complainants for the value of said goods.

The master was directed to ascertain and report the amount of the complainant's debt, and the value of goods purchased of James M. Webb at the time they were sold, with interest from the time of the sale.

The master, on the motion of the defendants, was subsequently directed to ascertain and report what sum defendants had paid to relieve the goods from the Georgia executions; but no proof was ever offered by defendants under this order.

The master reported, that complainant's debt with interest amounted to $1282$\frac{20}{100}$, and that the value of the goods purchased by defendants of Webb, with interest, was $2057$\frac{90}{100}$; and the Chancellor decreed accordingly a *pro rata* share to complainants, as by agreement another case of the same kind against the complainants was submitted at the same time.

As to the proof in the cause, it may be said, without hesitation, that it establishes the case made by the bill in all its material allegations touching the merits of the cause.

One allegation of the bill, viz: That the goods purchased were the goods of the copartnership of James M. Webb & Co. is admitted by the Webbs and denied by Flake and Freeman, and there is nothing in the record, apart from the answers of the Webbs, going to establish the truth of that allegation.

The refusal of the Chancellor to dismiss, and the decree which was rendered, are assigned for error.

BELSER & RICE, for plaintiffs in error:

1. Although the complainants obtained a judgment and execution, and return of no property found in the State of Georgia, against Webb & Co., it is clear that this gave them no right to go into chancery in Alabama, to reach property alleged to be fraudulently conveyed by Webb & Co. to Flake & Freeman, in Alabama. The creditors who are authorized to invoke the jurisdiction of our Chancery Courts to set aside fraudulent conveyances, are only those creditors who have obtained judgment in some court in Alabama. Tarbell v. Griggs, 3 Paige, 207; McElmoyle v. Cohen, 13 Peters, 312; Saunders v. Watson, 14 Ala. Rep. 198; Reese v. Bradford, 13 Ala. Rep. 844.

2. The foregoing was undeniably the law up to the passage of the act of 5th February, 1846. And that act was not designed to repeal, and does not repeal the law, in this respect. That act was only designed to confer jurisdiction upon our Courts of Chancery, upon certain conditions therein shown, in favor of creditors who had not reduced their de-

mands to judgment, when they complied with the pre-requisites of the act, when the debtor, (either " non-resident " or " absconding,") at the filing of the bill owns " any real or personal property, of either a legal or equitable nature, or any choses in action within this State," or when any person "within this State," is at the filing of the bill, " indebted " to any such debtor. These terms thus used in this act, show that the act was not intended to reach cases where the debtor had fraudently sold and delivered his property, and received the agreed price before the bill was filed; because in no legal sense can a man in this State be said to have either a legal or equitable right to property for which he has received the agreed price, and which he has fraudulently sold and delivered. Walke v. McGehee, 15 Ala. Rep. 183; Reavis v. Garner, 12 Ala. Rep. 661 ; Roden v. Murphy, 10 Ala. Rep. 804; Harrel v. Whitman, 19 Ala. Rep. 135 ; Roby v. Curry & Dismukes, June term, 1852, by Dargan, C. J.; Patton v. Smith, 7 Iredell's Rep. 438 ; Logan v. Simmons, 6 Iredell's Equity Rep. 180 ; Moore v. Simpson, 5 Litt. Rep. 49 ; Eaton v. Breathett, 8 Humph. Rep. 534.

3. The property, choses in actions and debts, which are authorized by the act of 1846 to be reached by bill and attachment, must not be such as the debtor had once owned and had sold to a purchaser, who had paid for and consumed them, or sold them again long before the filing of the bill, but such as the debtor could have recovered by suit at the filing of the bill, such as he owned either legally or equitably at the filing of the bill. This is made obvious by the provisions contained in the fourth section of the act, which directs a sale within ten days of the perishable property, without any trial or contestation; and by the sixth section, which makes it the imperative duty of the court to appropriate the property attached, " to the satisfaction of the complainant's claim," and provides, that if it should not be sufficient to pay the amount of the decree, an execution may issue, " to be levied on other property in the State, or the register may issue a summons garnisheeing any other debtor or debtors of said principal defendant in the same manner and subject to the same rules that garnishments are now under by the laws of this State." Yarbrough v. Hudson, 19 Ala. Rep. 654. The ninth section

of the act makes void any transfer, sale or assignment by the debtor, of the property attached, "after such attachment," clearly indicating that the property attached was such only as the debtor had not transferred or sold before such attachment.

No part of the act of 1846 authorizes any person to claim the property attached; nor does it contemplate or provide for any contestation as to the ownership of the property; thus plainly showing that it extends to no property which had been sold by the debtor, and that it confers no authority to pronounce a decree, for a specified sum of money, against those who are alleged by the bill to have been fraudulent purchasers of it from the debtor prior to the filing of the bill, nor against any person who claimed to have purchased the property prior to the filing of the bill, and paid for it the agreed price, and then sold it again to a third person, who bought it fairly and paid for it a fair price. A fraudulent purchaser of goods from a debtor cannot be held liable to a creditor in chancery for the value or proceeds of the goods, if before any bill filed against him he has sold them to a third person, who bought and paid for them fairly, especially if the creditor has not reduced his claim to judgment in this State.

4. The act of 5th February, 1846, is not retrospective, and cannot entitle complainants to come into chancery, to reach property of their debtor which their bill charges was fraudulently sold, and delivered and paid for, but does not allege or show was fraudulently sold after the 5th February, 1846. Bell v. Glazier, 13 N. H. Rep. 134, (note the difference between our law and the law of N. H.;) Kidd v. Montague, 19 Ala. Rep. 619; Barnes v. Mayor, 19 Ala. Rep. 707.

5. Where a bill is filed in 1850, seeking to set aside an alleged fraudulent sale of personal property made by a debtor in 1846, and the bill does not show that the fraudulent sale occurred after the 5th February, 1846, and does not show that complainant had ever obtained judgment in this State, nor that he was a creditor at the time of such sale, such bill cannot be sustained under the act of 1846, or any other law.

6. A creditor who files his bill in 1850, and makes no other allegation of indebtedness to him than that he recovered a judgment in one of the courts of Georgia in 1847, does not thereby show that he was a creditor in 1846. 14 Ala. 139.

7. The title to relief relied on by the complainants, is the statute of February 5, 1846. The general rule is, that where a party takes or claims by statute or title on record, "every thing essential to that title must be apparent upon the record." "An omission of a statute requisite, is fatal," notwithstanding the agreement of the parties to omit it. United States v. Slade, 2 Mason's Rep. 71; Mitchell v. Kirtland, 7 Conn. Rep. 229; Gantly v. Ewing, 3 How. U. S. Rep. 713; United States v. Kendrick, 2 Mason's Rep. 69; Thatcher v. Powell, 6 Wheat. Rep. 119–127.

8. Unless the complainants have shown by their bill, that they have complied with every requisite of the statute, they have no title to relief, and the Chancery Court had no power to grant any relief. It is a question of power. And if the court had no power, the consent of the parties could not confer it. Flake & Freeman have made no consent, and have not waived the right to raise this question of power.—See the cases cited in the next preceding paragraph.

9. The court had no power, no jurisdiction, in this case, because at least two of the requisites of the statute are omitted, to-wit:

I. No "affidavit is made by the complainant or complainants or some one of them, that the defendant or defendants are indebted as charged in the bill, and that the defendants are non-residents," &c. United States v. Kendrick, 2 Mason's Rep. 69; Hardaway v. Biles, 1 Smedes & Marsh. 657; Toulmin v. Bennett, 3 Stew. & Por. 225; Cook v. The U. States, 1 G. Green's (Iowa) Rep. 39; Greenvault v. Bank, 2 Doug. (Michigan) Rep. 498; Laight v. Morgan, 1 Johns. Cases, 429; 4 Denio Rep. 71, 93, 118, 592; Bell v. Moore, 9 Ala. Rep. 823; Taylor v. Watkins, 4 B. Monroe, 561; 9 Ala. 743; McReynolds v. Neal, 8 Humph. Rep. 12; Thruston v. Masterson, 9 Dana, 236; Commissioners v. Gaines, 3 Brevard's Rep. 396; 5 Pike, 32; Brown v. Woods, 6 J. J. Marsh. 11; Ladbroke v. James, Willis' Rep. 199; Little v. Hasey, 12 Mass. Rep. 319; 7 Georgia Rep. 52; 1 McLean, 471; Denning v. Corwin, 11 Wend. Rep. 647; 4 B. Monroe, 569; Shivers v. Wilson, 5 Har. & John. 130.

II. It is not shown by the bill, that the alleged non-resident debtors, either at the filing of the bill or any time since the 5th February, 1846, had (that is, owned or possessed)

"any real or personal property of either a legal or equitable nature, or any choses in action, within this State," or that any person "within this State" is indebted to said debtors. And no property or debt was in fact attached. Therefore the court had no power to render a decree, because the sixth section of the act of 1846 shows that there can be no decree unless there is "property acttached."

If there is "property attached," and when sold under the decree it proves to be insufficient to pay the complainant's claim, then, but not until then, can any execution or garnishment be awarded or issued.

A garnishment issued before the decree is made, is a nullity, and cannot of course confer jurisdiction.

This section also makes it clear that the appearance of the alleged fraudulent purchasers from the debtor, and the filing of an answer by them, cannot confer jurisdiction upon the Chancery Court. How can the appearance and answer of any defendant in such chancery proceeding, annul the positive requirements of the statute, or cure the omission of complainant to show by his bill a case within the jurisdiction of the court? Who ever heard it contended that a bill deficient in matter, became good by the appearance or answer of a defendant? There is no waiver in the case on the part of Flake & Freeman. Dew v. Bank, 9 Ala. Rep. 323; Brooks v. Godwin, 8 Ala. Rep. 296; Shivers v. Wilson, 5 Har. & Johns. Rep. 130.

10. Our statutes authorizing the issuing of attachments at law, are essentially different in their objects and provisions, from the act of 5th February, 1846, and the jurisdiction of courts of law is different from chancery jurisdiction, and may be acquired by facts and occurrences which would not under the act of 1846 confer jurisdiction on a chancery court. An attachment at law, although issued without bond or affidavit, is to be abated on plea in abatement. Clay's Dig. 55, § 3. The provisions of the act are wholly different. The object of an attachment at law, is to compel the appearance of the defendant. If he appears, his appearance gives jurisdiction to the court at law, however void the process. Burroughs v. Wright, 3 Ala. Rep. 43. On the other hand, the appearance of the defendants in this case cannot confer jurisdiction on

the Court of Chancery. Before the Court of Chancery can acquire jurisdiction under the act of 1846, an attachment must not only issue according to its requisitions, but some of the property or debts of the debtor must be actually "attached."—See §§ 1 and 6 of the act of 1846. "An attachment cannot exist without custody or possession either by the officer or his servant." There was no levy, no property attached in this case. Burroughs v. Wright, 19 Vermont, 510.

11. Courts of Chancery, under the act of 1846, must not only have jurisdiction of the parties, but they must also have jurisdiction over the subject matter, and also of the process. And if there is a want of jurisdiction, either as to parties, the subject matter, or the process, the decree must be reversed and the bill dismissed. The Court of Chancery, as to the special authority conferred on them by the acts of 1846, is an inferior or limited court. Thatcher v. Powell, 6 Wheat. 119; 11 Wend. 647–652; Shivers v. Wilson, 5 Har. & Johns. Rep. 130. The subpœna brings F. & F. into court, but after they come in and look into the bill, all objections are open to them. They cannot object until they do come in, and it would be strange to say that coming in was a waiver of objections.

12. Conceding (ex gratia argumenti) that the goods could have been attached under the act of 1846, so long as they remained in the hands of Flake & Freeman, the alleged fraudulent purchasers, yet they could not be attached after they were sold by F. & F. to Hendricks. For although the title to the goods did not pass to F. & F. as against the creditors of Webb, yet the title did pass by the sale of F. & F. to Hendricks. This last sale is treated as valid by the bill itself, and is not drawn in question either by the pleadings or the proof, and of course passed the title to Hendricks. This occurred long before the bill was filed, and therefore when the bill was filed, these goods were not the property of Webb & Co., but the property of Hendricks; and this appears by the bill itself. The bill then shows upon its face, that the case therein stated is not a case within the jurisdiction of the Court of Chancery, nor within the provisions of the act of 1846. 5 Har. & Johns. 130.

If all the objections are overruled, then the decree cannot

be sustained. Among other objections to it, are the following, to-wit:

I. The non-residence of Webb is not charged to be in the knowledge of F. & F. The averment of their non-residence is not admitted by F. & F., but is denied in their answer. This material averment is not proved. This is fatal, and the bill must be dismissed.

II. There is a material variance between the allegations and proofs, in this: The bill alleges that the goods were the property of the firm of Webb & Co. This allegation is denied, and it is shown that they were the individual property of James M. Webb, who is alleged to be insolvent. This is fatal to the decree. Craig v. Craig, 6 Iredell's Eq. Rep. 191; Johnson v. King, 6 Humph. Rep. 233, and the note to that case; 12 Ala. 714; Paulding v. Lee & Ivey, 20 Ala. 753; 19 Ala. Rep. 596; Cook v. Arthur, 11 Iredell's Law Rep. 408; 4 Dev. Rep. 367; 14 Missouri, 465.

III. F. & F. are charged by the original decrees as garnishees, contrary to the express provisions of the sixth section of the act of 1846, which shows that judgment cannot be given in the first instance against them, nor until after a decree is rendered against the Webbs (the debtors) and a sale under that decree, and a deficiency thus ascertained. This is fatal. Ladbroke v. James, Willes' Rep. 199; Service v. Heermance, 1 Johns. Rep. 91. The garnishment which thus may issue after judgment, can reach only what a garnishment at law would reach.—See § 6. A garnishment at law would not lie against F. & F.

IV. F. & F. are charged with the value of the goods as estimated by witnesses, and interest thereon from the time they sold them to the Hendricks, without allowing them credit for what they paid Webb ($600) for them.

As they sold the goods to Hendricks, and that sale is not assailed by complainants for unfairness, it was unjust to charge them with more than they received on that sale, deducting therefrom the $600 paid by them to Webb. No interest was allowable until the bill was filed. Hudson v. Crutchfield, 12 Ala. Rep. 433.

The averment as to the $60 account cannot be noticed, because it does not show the name of the person who owed

that account, or whether he resided within this State or not. And there is no proof as to the $60 account. The answer denies the averment as to that. And the decree cannot be aided by anything said as to that account, for it is not proved.

It is said by the counsel for complainants, that James M. Webb was of weak mind and imposed upon, and therefore could have filed a bill against F. & F. This is a great mistake: 1st. Because the bill shows distinctly that his intent in selling was to defraud his creditors. This intent would bar him from any relief in chancery, although such intent was not his only motive. Matthews v. Bliss, 22 Pick. 48.

CATO and ELMORE & YANCEY, *contra:*

1. The objection to the affidavit cannot be made at the hearing, after the party has appeared and pleaded, being an irregularity only. Brooks & Lucas v. Goodwin, 8 Ala. 296; Voorhies v. Jackson, 10 Peters 449; Smith v. Chapman, 6 Porter 365.

2. It is only an irregularity, and the objection must be taken at the first term after the party is brought into court. 1. By motion to quash, when the defect appears on the face of the proceedings. Lowry v. Stowe, 7 Porter 483; Calhoun v. Cozzens, 3 Ala. 21; McCartney v. Branch Bank at Huntsville, 3 Ala. 709. 2. By plea in abatement, when the defect does not appear in the proceedings. Jackson v. Stanly, 2 Ala. 326; Calhoun v. Cozzens, 3 Ala. 21; Conklin v. Harris, 5 Ala. 213; Cobb v. Force, 6 Ala. 408; Jones v. Pope, 6 Ala. 154; Loomis v. Allen, 7 Ala. 706; Roberts v. Burke, 6 Ala. 348.

3. On motion to quash, as decided by the authorities above, everything in the proceedings is taken as true. The facts stated are admitted to be true, and they are those which authorize the bill and process. The affidavit is required on the same principle as in cases of injunction and *ne exeat,* to afford to the Chancellor *prima facie* evidence of the truth of the facts on which he is required to make the order for the process to issue.

To require the affidavit of the complainant alone would defeat the objects of the law, in cases where the debtor was absconding or disposing of his property, if the creditor lived in another State or was absent at the time.

This construction would not permit the bill to be filed where the creditor had already disposed of his property fraudulently.

The law gives additional remedies to a creditor, and must be construed to advance the remedy. Can the garnishee at law demur to the declaration for want of affidavit, when it discloses the loss of the note? The statute is directory only. King v. Trustees, &c., 7 B. & Cres. 6; Lester v. Cummings, 8 Hump. 335; Pollard v. Taylor, 13 Ala. 604; Boyd v. Boyless, 4 Hump. 386; Murray v. Cone, 8 Porter 250; Stapler v. Hurt, 16 Ala. 804; Runyan v. Morgan, 7 Hump. 210.

4. The garnishees cannot take advantage of an irregularity in the proceedings between the parties. Smith v. Chapman, 6 Porter 365; Lowry v. Clements, 9 Ala. 422.

5. On the issue between the plaintiff and the garnishee, the indebtedness of the defendant is not a question involved. Jones v. Pope, 6 Ala. 154.

6. It follows, from the principles laid down in the above cases, that Flake & Freeman cannot contest the facts or grounds on which the bill is allowed under the statute; cannot contest the indebtedness of Webb & Co., or their non-residence, or their partnership, or the fact that they had property or choses in action in Alabama, and were doing business here as partners. They may contest the fact, whether the goods bought by them were partnership goods, for the purpose of showing that they are not liable as debtors of the firm, or as having the property of the firm, and their denials in the answer on this point may be taken for what they are worth.

7. The Webbs, and especially James M. Webb, who had the management of the goods in Alabama, admit every allegation in the bill necessary for a decree against them, if the proof authorizes a decree against Flake & Freeman. As to the liability of Flake & Freeman:

1. If a fraudulent vendee exchanges the property, that which is received by him in exchange is substituted in the place of that bought, and if sold by him he will be held to account; and if the property is not in the State he is liable; and these principles apply to cases under the statute. Abney v. Kingsland, 10 Ala. 355; Carville v. Stout, 10 Ala. 796; Stapler v. Hurt, 16 Ala. 800; Sanders v. Watson, 14 Ala. Rep. 197.

2. The complainants were creditors of Webb & Co. at the time of the sale, and had then brought suit on the note, the foundation of the judgment on which this bill was filed. The record from Georgia is proof of the facts contained in it; that is, it is proof that the Webbs were sued on a note described in it, and that judgment was rendered thereon. The judgment is proof of the making of the note by the Webbs; the credit on it was before the sale, and this is an admission by the Webbs, before the sale, of indebtedness to complainants, and is proof of the fact. Dubose v. Young, 14 Ala. 139. If on the bill they are subsequent creditors, the sale being made to defeat existing creditors, complainants can take advantage of it.

3. The answers of Flake & Freeman show there were other debts to a considerable amount. They bought them with a knowledge of outstanding debts, for a grossly inadequate price, under suspicious circumstances; and these facts would constitute the purchase fraudulent, even against subsequent creditors. Inadequacy of price, &c. Proper v. Henderson, 11 Ala. 487; Bridges v. Eggleston, 14 Mass. 250.

4. The answers of Flake & Freeman are entitled to no weight as evidence; they both swear to facts which occurred with one only; the answer has the mark of falsehood on it, and is contradicted in material matters by various witnesses.

5. The goods, notes and accounts were worth more than $2000. In fact, the goods realized by sale $1800, and the notes and accounts were estimated by Flake & Freeman at about $900. In the final arrangement, by their admission they got the goods for one hundred and sixty dollars' worth according to the witnesses, and according to the answer, sold for $1300.

6. The only goods shown to have been under the management or control of the Webbs, or either of them, are the goods bought by Flake & Freeman, and were in fact partnership assets. It may be true, they bought of James M. Webb, and dealt with him individually, but that makes no difference. To allow Flake & Freeman a credit for what they paid, would be to encourage frauds and hold out temptations to commit them and speculate on the chances. But they are credited—that is, they are not charged with anything but what they got

from the sale of the goods; if they are to be credited with the price agreed to be given, then they should be charged with the value of the notes and accounts, as estimated by themselves; and this would bring it back to the amount for which they sold the goods. Note the rule as to construction of statutes, where a penalty or forfeiture of title is to be incurred. The garnishment is a writ of attachment, and when served on a party having property or effects of the debtor, or indebted to the debtor, is a levy on such property or effects or debts.

PHELAN, J.—Two objections are taken in this case by plaintiffs in error, to the exercise of jurisdiction by the Chancery Court.

The first is, that it is not competent for any one, but some one of the complainants, to make the oath required by the statute of the indebtedness of the defendants, and of their non-residence; because, the only words used in the statute are the words, "complainant or complainants, or some one of them." This statute was evidently intended to extend the remedy by attachment in chancery for the recovery of simple contract debts, without putting the creditor to the necessity of first reducing his demand to a judgment at law. Its object was remedial, and it must receive a liberal construction. To hold that, in a matter merely formal and preliminary to the proceeding, the complainant cannot act by another, because he is alone expressly mentioned in the statute, would be inconsistent with the nature and design of the law. See Foster & Co. v. Walker, 2 Ala. 177; Murray v. Cone, 8 Porter 250.

We have a general statutory declaration that the "attachment law of this State shall not be rigidly construed." Clay's Dig. 59, § 17. The act of February 5, 1846, comes fairly within the scope of this declaration.

The next objection taken is, that the facts of the case do not bring it within the scope of the jurisdiction, that being strictly a statutory jurisdiction. The latter proposition is conceded. Let us, then, examine what is the true construction of the statute, that we may determine whether the facts of the case set forth in the bill bring it within this statutory jurisdiction.

The object of this statute of February 5, 1846, (Acts of 1845–6, p. 17) beyond doubt, was to enable creditors to avail themselves of the process of attachment by suit in chancery for the recovery of debts against "non-resident" and "absconding" debtors, and such as were "disposing of their property with fraudulent intent," without being subjected to the delay occasioned by the rule always enforced previously, which required that the creditor should reduce his demand to a judgment at law, when it was a demand properly cognizable by the courts of law, before he could invoke the aid of a court of chancery. This was manifestly the chief end in view at the passage of that act. The statute says: "That when any person or persons, who are non-residents of this State, have any real or personal property of either a legal or equitable nature, or any choses in action within this State, or when any person or persons within this State, whether residents or not, are indebted to any person or persons who are non-residents as aforesaid, and the latter named non-residents shall be indebted to any citizen of this or any other State or States, it shall be lawful for such last named creditor or creditors, without having first obtained a judgment at law, to file a bill in chancery to have said real or personal property, choses in action and debts attached."

The second section enacts, that when debts, or choses in action or effects are attached, the debtor or the person holding in his possession any chose in action shall be made a defendant to the bill.

The third section extends the provisions of the act to absconding debtors, and such as are disposing of their property fraudulently.

Such are the main provisions of the statute. What, we will next inquire, are the facts alleged in the bill? They are briefly as follows: Day & Co. set forth, that Webb & Co. were indebted to them, and that judgment had been rendered in their favor in Georgia for $838 in 1847 against Webb & Co.; that James M. Webb, one of the partners of Webb & Co., was conducting a branch of the partnership business at Glennville, Alabama, in the year 1846, and that some time in that year, (the proof shows it was after February 5, 1846,) the defendants, Flake & Freeman, by exciting the fears of said

James M. Webb, and with intent to defraud the creditors of Webb & Co., purchased out the whole of the stock of goods and the notes, accounts, &c., in his possession, for a very inadequate price; that in this way they got a stock of goods worth from $1500 to $2000, and from $500 to $800 worth of notes and accounts, for the sum of $1000, for which they gave their note payable in thirty days; that the Webbs, finding out in a short time that the representations made by Flake & Freeman, that their creditors were about to attach their goods, were false, applied to Flake & Freeman to rescind the contract. This they refused to do, but surrendered up to James M. Webb the notes and accounts and paid him $100, and they kept the goods and got back their note for $1000.

The bill charges that defendants, F. & F., knew that Webb & Co. were insolvent at the time of this purchase; that James M. Webb, with whom they traded, was a weak-minded man, easily bent to the purposes of designing men; that the whole affair between Webb & Co. and F. & F., was a fraudulent combination to defraud the creditors of the Webbs; that F. & F. have disposed of the goods; and that Webb & Co. are non-residents.

The bill prays that Flake & Freeman and Webb & Co., be made defendants and required to answer, and that process of attachment and garnishment issue agreeably to the provisions of the act of 5th February, 1846, and for general relief.

Will the allegations of this bill bring the case within the statutory jurisdiction conferred on the Court of Chancery by the act of 5th February, 1846? Plaintiffs in error insist that they do not. That act, they say, will only authorize an attachment in chancery in cases where tangible property of the debtor is seized under the attachment; or where a lien is fixed on some debt due to the debtor by service of a copy of the bill or some equivalent process; that it is not pretended, that this attachment is levied on any tangible property of the Webbs; and that the facts setf orth in the bill, admitting them to be true, as they are forced to do on demurrer or motion to dismiss for want of equity, show of themselves that no debt is due from F. & F. to the Webbs; that whatever may have been the nature of the transaction between them and James M. Webb, touching the purchase and sale

of the goods, as between them they were paid for, and left nothing behind for which debt or *indebitatus assumpsit* would lie.

Every part of this argument may be conceded; but the question remains, cannot money or effects of the debtor in the hands of third persons, not liable to seizure from their nature, be attached under this act? We cannot doubt but that they may.

The terms of that act, already quoted, clearly show that it was the intention of the legislature to bring every thing within the scope of the attaching process in chancery by this act, that was liable to attachment at law. The words of the act are broader and more comprehensive than the words of the general attachment laws, for "equitable" estates in property both real and personal are made subject to attachment, which is not the case at law to a certain extent. We take it to be a just construction of this statute to say, that it intended that whatever could be attached at law, could likewise, in a proper case, be attached in chancery; and that the plaintiff might proceed without first reducing his demand to a judgment at law. In fact, there are very material extensions of the remedy by attachment growing out of this act, in the right to attach equitable estates; to include debtors and garnishees in one suit; and to sue in chancery on a simple contract debt. It is remedial, and should be so construed.

Suppose Day & Co. had sued out an attachment against Webb & Co. at law, and garnisheed Flake & Freeman to answer what debts they owed, and what property or effects they had in their hands belonging to Webb & Co. Bring it to an issue: F. & F. being garnisheed, come in and deny, upon oath, that they owe or have effects, &c. This the plaintiffs, Day & Co., controvert upon oath, and an issue is formed under the direction of the court, in the simple way authorized by our decisions. Upon the trial of such issue, Day & Co. establish by proof the material allegations of this bill, namely: that F. & F. with intent "to hinder, delay and defraud" the creditors of Webb & Co., purchased their stock of goods worth $1500 to $2000 for $100, and resold them and pocketed the money. Can it be questioned that, under such allegations, if sustained by proof, the jury would be

instructed to find the issue for the plaintiffs, and ascertain the amount of money in their hands from the resale, as money or effects of Webb & Co.?

It has been decided, that the trustee in a deed void as to creditors for fraud, could be garnisheed, and money or effects in his hands arising from the sale of the trust property subjected to the payment of the debts of the grantor in the deed. Hazard v. Franklin, 2 Ala. 349. In that case Judge Ormond says, "It is the practice every day to try the validity of a deed by levying an execution on the property conveyed by it; and we see no reason why the same object should not be accomplished by a garnishment." See also, Richards v. Hazard, 1 S. & Port. 139. If the purchase of the goods by F. & F. of Webb & Co. was fraudulent, the law makes it void as to the creditors of the vendors; and so likewise with any subsequent vendee of the same goods with notice: no title passes. Powell v. Wragg, 13 Ala. 161. If the goods are afterwards sold to a *bona fide* purchaser, the law will pass the title for the sake of the innocent, but in that case will make the seller accountable to the creditors of the first vendor. Abney v. Kingsland, 10 Ala. 355. Upon what principle? Upon the principle that a fraudulent vendee, who sells the property acquired by a fraudulent purchase, is held to be a trustee of the proceeds of the sale, for the creditors of the fraudulent vendor; it is money of the vendor in his hands for their benefit. If this be true, he can be garnisheed like any other trustee holding property or funds of the debtor in attachment, as was the trustee in the case of Abney v. Kingsland, *supra*. If subject to garnishment at law, it follows from what has been said, that he is subject to attachment by bill in chancery under this act, which, as has been shown, was designed to extend, and not to abridge this remedy, and as such is to receive a liberal interpretation. Pollard v. Taylor, 13 Ala. 604.

But it might be safely conceded, that a garnishment at law would not lie in this case, and yet, we should hold, that the averments of this bill would uphold the jurisdiction of the Chancery Court, when we consider the ample field which is opened for such jurisdiction, in the words which declare, that all "property, real and personal," and

whether of a "legal or equitable nature," shall be subject to attachment in chancery under this act.

Coming to the consideration of the case, we find the allegations of the bill sustained, and such as would warrant a decree in favor of the complainants, with one exception. The bill alleges, that the property purchased by Flake & Freeman of James M. Webb, was the partnership property of James M. Webb & Co. This is denied by the answer of F. & F., and the answer avers that they were the goods, &c., of James M. Webb individually. The proof of the defendants tends to establish this averment on their part, and there is not any proof at all on the part of the complainants going to show the truth of their averment, that the property was partnership property. As every complainant must recover on the case made by his bill, or not at all, the decree of the Chancellor will have to be reversed on this ground. Scott v. Dunsby, 12 Ala. 714.

For the error we have noticed, the decree below is reversed. Let a decree be here rendered dismissing the bill without prejudice to defendants in error, and at their costs.