## BILLINGSLEY'S HEIRS *vs.* BILLINGSLEY.

[BILL IN EQUITY FOR REFORMATION OF VENDOR'S DEED.]

1. *Offer to do equity.*—A bill for the reformation of a contract so far partakes of the nature of a bill for specific performance, that it requires an offer by the complainant, in his bill, to do equity, by complying with all the stipulations of the contract on his part to be performed; and an offer to pay the unpaid balance of the purchase-money, which is alleged to have been a specified sum in gross, is not a sufficient offer to do equity, when the proof shows that the agreed price was a certain sum per acre, which amounted in the aggregate to a larger sum than that specified in the bill.

2. *What defense may be set up in answer, without cross-bill.*—Under a bill for the reformation of a contract, the defense may be set up in the answer, without filing a cross-bill, that the complainant's offer to do equity is insufficient.

3. *Variance.*—Where a purchaser's bill, seeking the reformation of his vendor's deed for land, alleges that the land was bought at the aggregate price of $29,000 in gross, while the proof shows that the agreed price was $15 per acre, and amounted in the aggregate to more than $30,000,—the variance between the allegations and proof is fatal.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES B. CLARK.

WM. M. BROOKS, for appellants.

I. W. GARROTT, *contra.*

R. W. WALKER, J.—The main object of the bill was, to reform a deed of conveyance for land, so as to include certain lands which, by mistake, were omitted therefrom, and to exclude certain other lands which, by a like mistake,

were included therein.  The allegation of the bill is, that
the deed, as executed, includes the west half of the north-
·west quarter, and the south-west quarter, of section *thirty-*
·*two,* in township nineteen, range seven, which was not
embraced in the purchase, and was inserted, by mistake, in
lieu of the corresponding portions of section *twenty-two,*
·in the same township and range, which was a part of the
tract intended to be conveyed; and it is also alleged, that
·the west half of the north-east quarter of section twenty-
eight was included in the purchase, but was left out of the
·deed by mistake.   Both of these mistakes are admitted by
·the answer, and are otherwise fully proved.

The bill alleges, also, that the entire tract of land in-
cluded in the purchase—that which was intended to be
·embraced in the deed, and the quarter-section for which the
·intestate executed only his title-bond—amounted to two
thousand and fourteen 19-100 acres, for the whole of which
the complainant was to pay the round sum of $29,000;
·that a part of this amount was to be paid by the complain-
ant in discharge of the intestate's liability for the said
·quarter-section, for which a title-bond only was executed,
because the intestate had never paid any part of the pur-
·chase-money for it, and the balance was to be paid to the
intestate himself; and that the amount which the intestate
·owed on account of said quarter-section, and which the
complainant thus agreed to pay, " was estimated, accord-
ing to his best recollection, to be about $6,005," leaving a
·balance of $22,995 to be paid to the intestate himself.
The answer admits, that the complainant purchased of the
·intestate the lands specified in the bill, amounting in all to
·two thousand and fourteen 19-100 acres; but denies the
allegation that the agreed price was the round sum of
·$29,000, and asserts that the agreed price was $15 per acre,
which would make the total purchase-money $30,212 50,
or $1212 50 more than the sum alleged in the bill.

The proof clearly shows, that the land was sold at $15
·per acre, as stated in the answer, and not for the round
·sum of $29,000, as alleged in the bill.   Estimating the

land at $15 per acre, and bearing in mind that the west half of the north-east quarter of section twenty-eight was, by mistake, left out in drawing the deed, the whole transaction is explained. Thus, both the deed and the mortgage show, that the parties, by mistake, supposed that the land contained but seventeen hundred and seventy-three 29-100 acres (exclusive of the quarter-section for which the title-bond was given), which, at $15 per acre, would come to $26,595 43.; to which the price of the said quarter-section ($2400) being added, makes 28,995. But the complainant was to discharge the intestate's liability on account of said quarter-section, and was to execute his notes to the intestate for the balance of the purchase-money; and the intestate's title-bond for said quarter-section shows, that the amount which it was estimated he was liable to pay therefor, was $6,000, instead of $6,005. Deducting $6,000 from $28,995 (which would have been the aggregate price of all the land, at $15 per acre, if the quantity had been what was supposed by the parties when the deed was executed), leaves $22,995, which is the precise sum stated in the deed and mortgage, and for which the complainant executed his notes to the intestate. Added to these significant circumstances, is the direct and unequivocal evidence of several witnesses, who prove deliberate and repeated declarations by both parties, that the price which the complainant was to pay for the land was $15 per acre. It is clear, therefore, that the complainant was to pay, according to the contract, $30,212, and not merely $29,000.

The complainant offered, in his bill, to pay "the balance of *said* purchase-money due for said lands;" meaning thereby, as the chancellor properly held, the balance of $29,000, which he alleged to be the amount of the purchase-money; and the decree of the chancellor was, that, on his doing so, the deed should be so reformed as to include the west half of the north-west quarter of section *twenty-two*, and to exclude the west half of the north-west quarter of section *thirty-two;* but, as to the west half of the north-east quarter of section *twenty-eight*, left out of

the deed by mistake, he refused to grant any relief, on the ground that there was no offer in the bill to pay for it. It is now insisted, that the bill ought to have been dismissed—*first*, because the complainant did not offer to perform his part of the contract, by paying the balance of the purchase-money which, according to the evidence, he agreed to pay for the land ; and, *secondly*, because there is a fatal variance between the allegations and the proof, in reference to the terms of the contract between the parties.

[1.] Waiving these questions for the present, we think it is clear that the decree of the chancellor cannot be sustained. The maxim, that " he who seeks equity must do equity," lies at the foundation of equity jurisprudence. It is on this principle that, in bills for the specific performance of contracts, the complainant is required to show that he has performed, or offered to perform, the acts which formed the consideration of the undertaking sought to be enforced. *Bell v. Thompson*, 34 Ala. 636. The same rule must apply to bills for the reformation of contracts ; which are in the nature of bills for specific performance, for they seek, in effect, to enforce the performance of that which the parties had agreed should be, but which, by mistake, was not done. By the agreement between these parties, the complainant was as much bound to pay the stipulated purchase-money, as the defendant's intestate was to convey the land included in the purchase. Upon what principle, then, can a court of equity require the vendor to comply with his undertaking, (for such would be the effect of a decree reforming the deed,) without compelling the purchaser to ' do equity,' by paying all he had agreed to pay for the land embraced in the purchase. The chancellor decreed, that the deed should be corrected, by including one of the two parcels of land which were left out by mistake. Both mistakes were proved, one as fully as the other. On the proof, the complainant was just as much entitled to the correction of one as of the other ; and we know of no principle which would enable a court to select between the two, and to decree the correction of one, leaving the other un-

touched. The purchase was of the tract as a whole—not of the parcels separately—at $15 per acre. For aught that we can tell, the vendor might not have been willing to take $15 per acre, if the west half of the north-east quarter of section twenty-eight had been left out of the trade; or he might not have been willing to sell at all, unless all the land was included in the purchase.

[2.] We do not doubt, that the defendant may insist on the complainant's failure to pay, or offer to pay, the whole of the purchase-money according to agreement, by way of defense in his answer, without filing a cross-bill. He seeks no active relief against the complainant, but merely demands that the latter shall be required to 'do equity,' as a condition to a decree in his favor against the defendant. *Bradford v. Union Bank of Tennessee*, 13 Howard, (U. S.) 57, 66.; *Williams v. Mitchell*, 30 Ala. 299.; *Masterson v. Masterson*, 32 Ala. 439.; Willard's Equity, 288; *Wyche v. Green*, 11 Geo. 169.

[3.] Besides this, we think there was a fatal variance between the allegations and the evidence. What was the contract between the parties, as to the price to be paid for the land, was a material point in the case. The complainant would, or would not, according as the contract was one way or the other, be entitled to relief. If the land was bought for $29,000, then the offer made in the bill was sufficient; but, if the price was $15 per acre, the complainant was bound to pay $30,212, and his offer was insufficient.—See cases cited in Shepherd's Digest, 242, § 5; *Flake v. Day*, 22 Ala. 132; *Crothers v. Lee*, 29 Ala. 337.

The decree is reversed, and the cause remanded.